At this time, we'll hear Bank of New York Mellon v. Bell. Mr. Bell, step up to the podium and use the microphone. Yes. And good morning to you. Good morning, sir. May it please the court, I apologize for having to be in this circumstance. We, just a quick backdrop because the time is very limited here. Based on the financial crisis, our family wound up into a financial circumstance. We have your papers. Okay, fantastic. So let me move on to the arguments then. Right ahead. All right. It is, the plaintiff had real problems with this case. They essentially got sanctioned twice, contempt proceedings went forward, so forth. They tried to basically form shop. They went to multiple courts to try to get away from the judge that was ruling against them. And so, as their last option, after they even tried to remove the case to the district court, they attempted to withdraw the case, wrongfully withdraw the case, and then to try to go to the district court, because they, frankly, felt like they could get a better ruling in the district court than in the state court. We believe that what happened was that they violated a prior exclusive jurisdiction doctrine and the court did not have the right, the subject matter jurisdiction, that it was left in the state court. That the state court did not waive, that the state court under practice book section 1055 was required once counterclaims were interposed, that neither party, according to Connecticut law, could control the power of the case anymore. That both parties gave up their interest. Is there anything else that's still there in state court? Yes, your honor. There is a full set of counterclaims in state court. There is a- They haven't been heard? No, that's one of the biggest problems here, is that our ability to defend our case, it was like we were set in abeyance. We had to freeze while he went to federal court. Got almost like a preclusion order from federal court, and even though our counterclaims preceded his counterclaims, we were, our counterclaims preceded his case, and our counterclaims could have defeated the mortgage in the state court because we asked for injunctive and equitable relief in our claims. And so we claimed fraud, we claimed that it was improper enforcement. We made a variety of claims that a court could have determined that they could not enforce the mortgage based upon the fabricated evidence that was found that they had put in the case before. And so consequently, this was just an end run around our ability to defend our case and in violation of Connecticut rules. And in addition to that, the Connecticut appellate court determined that the state court still had jurisdiction over the proceedings. And but regardless of that, we were forced and ramrodded through the federal court for a number of years until we finally get to this point where we're trying to defend our rights. I have other issues, but I'm out of my time. We have the briefs, so read the papers. Yes, I know, I saw that. Clearly you guys read the papers. Okay. You've reserved a couple minutes for rebuttal, so it probably makes sense for you to listen to the other lawyers. Yes, your honor. And then we'll hear you again. Okay, thanks. Thank you. Yes, yes, but Why don't we hear from amicus first since you're neutral and in the middle. Sure. May it please the court, my name is Susanna Weaver and I was appointed as amicus to brief the question of whether federal or state law governs this dispute under the Supreme Court's fragmented opinion in Shady Grove. I'll admit at the outset that I'm not entirely certain upon which aspect of the matter the court's question was focused. But in researching the case, I came upon two potential conflicts that seemed most likely to be the court's focus. The first is the potential conflict between the federal and Connecticut rules governing stays pending appeal. And the second between application of Connecticut Statute 49-15 which, if applied, would moot the appeal and federal law under which the court would have jurisdiction to hear the appeal. I think the first potential conflict is reasonably straightforward. The different federal and state rules for stays pending appeal appear to be in direct conflict. And I think the federal rule would apply under either the majority or concurring opinion in Shady Grove as a rule that really regulates procedure. The second conflict, and more specifically the effect of the combination of the two, I think is more complicated. I didn't come across any federal rule of procedure that directly conflicts with application of Connecticut Statute 49-15 to moot the case under the circumstances presented. But of course, in the absence of section 49-15, I don't think there would be an argument that the appeal is moot. And that led me to think that the court had to conduct the murky, eerie analysis. I'll say my initial instinct was that because section 49-15 is sort of quasi-procedural and found in Connecticut substantive law regarding foreclosures, that it should be given application. But that leads to a result that I think is contrary to the twin aims of the eerie analysis, preventing forum shopping and inequitable administration of justice. And that's because the only reason Connecticut Statute 49-15 is pertinent here is because we're in federal court. If we were in state court, the bells filing of an appeal would have stayed the law days and section 49-15 would have no application. So I think that the application of 49.15 combined with the high bar for state's pending appeal in federal court essentially would deprive defendants. All of this, much of this deals with the eerie question, which arises from diversity jurisdiction. But one of the parties here is the Federal Deposit Insurance Corporation. Doesn't that provide a basis for federal question jurisdiction? So that we can avoid the really difficult things that you have kindly undertaken to research for us. Well, I have to say that I haven't given that question any thought. I sort of came to this under the assumption that this was a- No, that's what you were asked to do. I mean, you've done what you were asked to do. My question is whether- Whether there's federal question jurisdiction based on FDIC being a party. Yeah. I can't say that I know the answer to that question, but it- I can't say that you find murky even after considerable research. I think so, and even after more research, I find them even murkier. Because, for example, I think if this court were to rule that this appeal is moot, you might run into then a Munsingware issue where the bells could ask the court to vacate the decision below based on their inability to pursue it on appeal. And then I don't know what happens if you've vacated a foreclosure judgment that was the thing that triggered the bar. And I think there are complex questions of- I think if you look at cases like Gasparini versus Center for Humanities and Byrd v. Blue Ridge that talk about balancing the federal and state interests. I think there is a federal interest here in appellate review. Gasparini says that that's a control necessary to proper and fair administration of justice. And here, I think there would be difficult issues if the court could not satisfy itself that the district court had jurisdiction before addressing an issue of Connecticut state law regarding mootness. Thank you. Thank you for your service. Thank you. Good morning. Jeff Milne for the Appellee. I'd like to correct the record with respect to statements by Mr. Bell. The state court counterclaims do not have any claims for injunctive relief. They do not have any claims for equitable relief. What are the claims for? Do they state that it's for money damages only? Yes. They're monetary damage claims only. And they're pending? That's correct. They're still pending? Yes. And with respect to this case, it was a five-day bench trial in which the Bells were permitted to exercise all of their rights with respect to defending the claims. And ultimately, they sought primary jurisdiction as their argument with respect to why the district court didn't have subject matter jurisdiction. Judge Underhill denied a motion to dismiss on that basis because the state court foreclosure action was withdrawn eight months before this case was filed. The Bells then asserted it as a special defense at the time of trial, primary exclusive jurisdiction. Judge Meyer considered that, found that there was no factual basis to support the primary exclusive jurisdiction doctrine, and he rejected it. After trial, the Bells filed a motion for a new trial. On that basis, they again argued the primary exclusive jurisdiction doctrine. Again, that was rejected by the district court, rejected properly because this suit was filed eight months after the foreclosure action was withdrawn in the state court, so there was no concurrent proceeding over the res. With respect to the amicus arguments, they concede that 4915, which is a statute that's 70 years old in Connecticut, is a substantive statute. It governs real property rights and when they vest under state law in Connecticut. And do I understand it means that when you get a judgment of foreclosure, you can foreclose as it were forthwith? Is that what it says? Well, no, Your Honor. 4915 deals with when title vests in the context of a mortgage foreclosure in Connecticut. And it says what? And it says that for purposes of this appeal, once title vests, proceedings with respect to the foreclosure are concluded and any proceedings thereafter are essentially moot. And that's what Connecticut case law provides. Counsel concede . . . And the practical effect of that is what? The practical effect of this statute on this appeal is that title has vested, title vested last year, and as a consequence, the appeal of the foreclosure judgment is moot because there's no practical relief that this court can afford to the bells. Title vested without anything else happening? Title vested with the opportunity for the bells to redeem on their law day. If they chose to do that, they did not exercise their redemption rights and as a consequence, title vested in the plaintiff in September of 2017. Now Amicus argues that there's some sort of inequity in a diversity foreclosure action being filed because Connecticut practice book section 6111 invokes an automatic stay on appeals unless the trial judge believes that the stay on the appeal should be terminated because the appeal has no basis and is otherwise frivolous. Every diversity case in Connecticut presents the exact issue that's been raised by Amicus counsel here. In a wrongful death case or any other civil case in Connecticut, the case goes up on appeal under federal rule of appellate procedure 8, there is no automatic stay and there are instances in which appellate proceedings based on diversity jurisdiction could be mooted out based upon federal rule of appellate procedure 8. But because 4915 is a substantive statute that deals with real property rights under state law, the rules of decision act does not allow the application of ad hoc federal common law to the question that's been raised and addressed by Amicus counsel. They almost infer or Amicus counsel almost infers that what this court should do is not apply rule 8, that there's a stay in effect, but almost fall back to Connecticut practice book section 61-11 and invoke some sort of a stay when this court rejected in 2015 the Bell's emergency motion for stay and found that there was no likelihood of success on the merits. The district court judge addressed the motion for stay and rejected that motion on the same basis. In addition, they've had a bankruptcy stay that's gone on for more than a year. And in addition to that, there was an administrative stay that the second circuit imposed while they addressed the emergency motion for stay that was filed by the Bells. There was a bankruptcy stay. Which has since been lifted. Yes. So as a consequence, all of the procedural safeguards are in place here for any litigant in a diversity case in Connecticut to be able to have the issue of a stay and its merits addressed. The only difference between federal rule of appellate procedure 8 and 61-11 is who has the burden of proof. That's the only difference. And in this case, the Bells have had at least two opportunities to have a stay invoked, rejected by the second circuit, rejected by the trial judge. And as a consequence, this appeal is moot, title is vested, and the appeal should be dismissed. Thank you. Mr. Bell, we'll hear you now. First of all, counsel misstates the law in Connecticut. There's a substantial right to a stay in Connecticut. And the ability to have the stay overturned is not based upon the normal sort of injunctive relief standards that are used by the federal court. It is merely that all you have to do is show that you have a plausible appeal. It is not, you don't have to post a bond. You don't have to do any of those other factors. And so when he makes the claim that they are the same thing and they're the same right, they're not the same right. They are substantially different rights. And it's on the burden of the party seeking to undo the stay that they have to prove that your claim is invalid. So whereas in federal court, you have to prove that you have a substantial right of success on appeal. I mean, that's a much huge difference compared to in Connecticut where all you have to have is a plausible right to appeal because it's guaranteed by the constitution of the state of Connecticut and the rules that they put in place that gives you a right to an automatic stay. I would also argue, your honor, that under federal rule of civil procedure 62F, there's just been, I think, a mistaken understanding of that rule as it relates to foreclosure defenses. Because when the law days pass, the right passes to the plaintiff automatically. And so his right to the property is fully guaranteed at that point, and there's nothing that can be done to overturn it. I mean, let me not say there's nothing to be done to overturn it, but there's nothing that would normally kick in place unless there was an existing appeal in place to take away his right. Even the argument that has been put forward in some cases where he has to file a document, that document doesn't undermine his right to the property. In fact, there's a list pendants that notifies everybody that there's a case going on. And so I would believe that federal rule of civil procedure 62F, which gives an automatic stay, if state law provides an automatic stay, would kick into place here. The other thing, your honor, is, so we don't believe this case is moot. We also don't believe the case is moot under Connecticut law because of the fact that there was a challenge to the jurisdiction of the court. That the jurisdiction of the court should, that the district court should not have the power to just unilaterally determine that a person loses their right to property if the court did not have jurisdiction in the first place. And in Connecticut, that's exactly what happens. Connecticut doesn't allow federal 49-15 to kick in if there was a challenge to the jurisdiction. We pointed out in our briefs and our filings that in those cases, the court where the jurisdiction intertwined with the decision, the court has said no, 49-15 doesn't kick in. Okay, thank you. Thank you all. We'll reserve decision. That's the last case on calendar. Please adjourn court.